1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   ENTERPRISE TECHNOLOGY          CASE NO. 05-CV-2236 W (CAB)
     HOLDINGS, INC.,
12                                  ORDER (1) DENYING SUMMARY
                         Plaintiff, JUDGMENT AGAINST
13                                  DEFENDANT MADELEINE LOPEZ
          vs.                       (Doc. No. 133); (2) GRANTING
14                                  PARTIAL SUMMARY
                                    JUDGMENT AGAINST
15                                  DEFENDANT JAMES ALBERT
     NOVEON SYSTEMS, INC., et al.,  BEARS (Doc. No. 132); AND (3)
16                                  DENYING DEFENDANT BEARS'S
                        Defendants. MOTION FOR LEAVE TO ADMIT
17                                  REQUEST FOR ADMISSION
                                    ANSWERS (Doc. No. 148)
18

19

20        On December 8, 2005, Plaintiff Enterprise Technology Holdings, Inc. ("Plaintiff"

21   or "ETH"), a California corporation, commenced this action against Defendant Noveon

22   Systems, Inc. ("Noveon"). (Doc. No. 1.) Plaintiff subsequently amended its complaint,

23   naming Madeleine Lopez ("Defendant Lopez"), James Albert Bears ("Bears"), and

24   others as additional Defendants. (Doc. No. 63.) Plaintiff's First Amended Complaint

25   ("FAC") alleges copyright infringement, breach of contract, and 17 U.S.C. § 1202

26   claims against Defendant Bears. (Id.) The FAC also alleges that Defendant Lopez is

27   liable, as the alter ego of Noveon, for a prior default judgment entered against the

28   corporation. (Id.; see Doc. No. 108.) Plaintiff seeks injunctive relief, declaratory relief,

     and damages against Bears, and injunctive relief and damages against Defendant Lopez.

(Doc. No. 63.) Pending before the Court are Plaintiff's Motion for Partial Summary Judgment against Defendant Bears and Plaintiff's Motion for Summary Judgment against Defendant Lopez. (Doc. Nos. 132, 133.) The Court decides the matters on the papers submitted and without oral argument pursuant to S.D. Cal. Civ. R. 7.1(d.1). For the reasons stated below, the Court **DENIES** Plaintiff's summary judgment motion against Defendant Lopez (Doc. No. 133) and **GRANTS** Plaintiff's partial summary judgment motion against Defendant Bears (Doc. No. 132).

## I. BACKGROUND

### A. Introduction

In 1996, Francis Lopez and Alan Stanly ("Stanly") formed Prism Advanced Technologies, Inc. ("Prism") to distribute transportation management software (the "Programs"). (*Decl. of Francis Lopez* [hereinafter "*F. Lopez Decl.*"] 2:3–7.) Defendant James Albert Bears worked for Prism as a programmer. (*Decl. of Alan Stanly in Supp. of Pl.'s Mot. for Partial Summ. J. Against James Albert Bears* [hereinafter "*Stanly Decl.*"] 3:1–2.)

In mid-2003, Prism dissolved. On August 22, 2003, Prism became the subject of involuntary bankruptcy proceedings. (*Stanly Decl.* 2:10.) In December 2003, Stanly purchased all of Prism's assets—including the Programs at the center of this dispute—from Prism's Chapter 7 Bankruptcy Trustee.[1] (*F. Lopez Decl.* 3:19–22; see also

---

[1] In his Declaration, Francis Lopez proffers a variety of evidence suggesting that the Programs were not an asset of Prism and that Francis Lopez and Alan Stanly jointly owned the Programs. (See, e.g., *F. Lopez Decl.* 3:7–8.) Francis Lopez also directs the Court to statements made by Prism's corporate attorney, suggesting that Prism never owned the Programs. (*Id.* at 3:8–15; *M. Lopez Decl.* Ex. 4.) Plaintiff objects to Francis Lopez's statements and to those of Prism's corporate attorney on evidentiary grounds. (*Evidentiary Objections in Supp. of Pl.'s Mot. for Summ. J.* [hereinafter "*Evidentiary Objs.*"] 11:27–12:6, 12:17–27.) Both parties overlook the fact that the narrow issue before the Court concerns whether Defendant Lopez acted as the alter ego of Noveon—Magistrate Judge Bencivengo and District Judge Brewster established as a discovery sanction that Francis Lopez neither authored nor owned the Programs. (See Doc. Nos. 77, 95.) Accordingly, because the issue has already been settled, the Court **OVERRULES** Plaintiff's objections as moot.

*Decl. of Madeline Lopez* [hereinafter "*M. Lopez Decl.*"] Ex. 5.)[2] On December 31, 2003, Stanly assigned the rights to Prism's assets to Plaintiff ETH. (*FAC* ¶ 39; *Id.* Ex. 6.) Stanly had previously formed ETH as a vehicle for the distribution of the Programs purchased from Prism's bankruptcy estate. (See *Stanly Decl.* 1:27–2:22.) On October 11, 2005, Stanly filed a copyright for the Programs.[3] (*M. Lopez Decl.* Ex. 6.)

On June 25, 2003, Francis Lopez and his wife, Defendant Madeleine Lopez, formed Noveon and became the sole officers, directors, and shareholders of the corporation. (*Decl. of Timothy P. Dillon in Supp. of Pl.'s Mot. for Summ. J. Against Madeline Lopez* [hereinafter "*Dillon Decl. I*"] Ex. 6; *F. Lopez Decl.* 4:12–13.) Through Noveon, Defendant Lopez and Francis Lopez continued distributing the Programs formerly sold by Prism. (*F. Lopez Decl.* 2:26–27.) As the Programs' copyright owner, Plaintiff ETH brings this suit alleging copyright infringement and various other claims against Noveon, Defendant Lopez, and Defendant Bears. (See *FAC*.)

///

///

///

---

[2] Francis Lopez requests that the Court take judicial notice of the United States Bankruptcy Court for the Southern District of California's Order Granting Trustee's Motion to Sell Personal Property Free and Clear of Liens ("Order Granting Trustee's Motion"), and the court's Findings of Fact Re: Trustee's Motion to Sell Personal Property, both attached to the Declaration of Francis Lopez as Exhibit 5. (*F. Lopez Decl.* 3:24–25.) Because "federal courts . . . may take judicial notice of proceedings in other courts . . . if those proceedings have a direct relation to the matters at issue," the Court **GRANTS** Defendant Lopez's request for judicial notice. St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979); see also Fed. R. Evid. 201.

However, the Court rejects the claim that Francis Lopez maintained some interest in the Programs. (*F. Lopez Decl.* 3:22–24.) While the Order Granting Trustee's Motion did make the sale "free and clear of all liens claims and interests of any type, EXCEPT the interests of Francis Lopez," Defendant Lopez fails to indicate whether Francis Lopez ever established any legal interest in the Programs. (*M. Lopez Decl.* Ex. 5 at 2:14–16.) To the extent that Defendant Lopez seeks to establish a genuine issue of material fact regarding the ownership of the Programs, Defendant Lopez overlooks the fact that, following Noveon's failure to respond to discovery requests, Judge Brewster imposed issue sanctions conclusively establishing for the purposes of the instant litigation that Francis Lopez neither authored nor owned the Programs. (Doc. Nos. 77, 95.)

[3] Apparently, neither Stanly nor Prism had previously sought copyright protection for the Programs.

05cv2236W

### B.    Procedural History as to Defaulted Defendant Noveon

On December 13, 2005, Plaintiff ETH commenced the instant litigation against Noveon alleging copyright infringement and various related claims. (Doc. No. 1; *Dillon Decl. I* 2:1–2.) On May 12, 2006, Plaintiff obtained a preliminary injunction against Noveon, which enjoined the corporation and all those acting in concert with it from using or distributing Plaintiff's copyrighted Programs. (*Dillon Decl. I* 2:1–4.)

After the preliminary injunction, Noveon and its principals ceased participating in the litigation. (*Id.* at 2:4–6.) On August 2, 2006, Plaintiff propounded discovery requests on Noveon. (*Id.* at 2:7–12.) Noveon failed to timely respond. (*Id.*) On November 6, 2006, Plaintiff filed an Application for Discovery Sanctions against Noveon. (Doc. No. 41.) On December 8, 2006, Magistrate Judge Cathy Ann Bencivengo ("Judge Bencivengo") granted Plaintiff's motion for monetary sanctions and recommended that District Judge Rudi M. Brewster ("Judge Brewster") impose non-monetary sanctions. (*Req. for Judicial Notice in Supp. of Pl.'s Mot. for Summ. J. Against Madeleine Lopez* [hereinafter "*RJN I*"] Ex. 6.)[4]

On March 19, 2007, Judge Brewster imposed evidentiary sanctions against Noveon and deemed eleven Requests for Admission, to which Noveon never responded, as admitted. (Doc. No. 71.) On April 11 and April 16, 2007, Judge Brewster granted further sanctions against Noveon, striking Noveon's answer and counterclaim and entering a clerk's entry of default against the corporation. (Doc. Nos. 88, 91.) On May 24, 2007, Judge Brewster granted Plaintiff's motion for issue sanctions

///

///

///

---

[4] Plaintiff requests that the Court judicially notice seven documents filed in connection with the instant litigation. (See *RJN I*.) A district court may properly take judicial notice of its own records. Kelly v. Johnston, 111 F.2d 613, 615 (9th Cir. 1940); see also St. Louis Baptist Temple, 605 F.2d at 1172 ("[A] court may . . . take judicial notice, whether requested or not[,] of its own records and files." (citation omitted)). Accordingly, the Court **GRANTS** Plaintiff's request for judicial notice.

against Noveon, designating sixteen issues recommended by Judge Bencivengo as established.[5]  (Doc. Nos. 77, 95.)

On July 3, 2007, liability having been established through issue sanctions, Plaintiff moved for default judgment against Noveon.  (Doc. No. 99.)  On August 15, 2007, Judge Brewster granted Plaintiff's uncontested Motion for Default Judgment against Noveon and awarded Plaintiff $733,478.01 in damages, attorneys' fees and costs.  (*RJN I* Ex. 2.)  Judge Brewster also permanently enjoined Noveon from further copyright infringement and ordered Noveon to destroy all infringing material in its possession. (*Id.*)

On February 23, 2007, Plaintiff filed a Motion for Modification of Case Management Conference Order and Leave for Plaintiff to Amend Verified Complaint. (Doc. No. 61.)  Judge Brewster granted Plaintiff's motion on February 27, 2007.  (*RJN I* Ex. 7.)  On February 28, 2007, Plaintiff filed its FAC naming Defendants Lopez and Bears as additional defendants in the litigation.  (*RJN I* Ex. 1.)  On August 29, 2007, the case was reassigned to this Court.  (Doc. No. 112.)

## C.  Defendant Lopez's Involvement with Noveon

Through the instant Motion, Plaintiff seeks to "pierce the corporate veil" and hold Defendant Lopez liable for the default judgment entered against Noveon.  (*Pl.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. Against Madeleine Lopez* [hereinafter "*Pl.'s Mem. of P. & A. I*"] 1:3–17.)  As the alter ego doctrine is a fact sensitive, multi-faceted inquiry, the Court discusses Plaintiff's evidence in detail below.

### 1.  *Noveon's Initial Capitalization and Subsequent Financial Health*

From Noveon's inception, the corporation employed Defendant Lopez and her husband, Francis Lopez, as executives and directors.  (*Dillon Decl. I* Ex. 7.)  Defendant

---

[5] Judge Brewster deemed established, *inter alia*, that Francis Lopez neither authored nor owned the Programs, that Alan Stanly is the sole owner of the Programs, and that Noveon knowingly and willfully infringed upon Plaintiff's copyrights.  (Doc. Nos. 77, 95.)

Lopez contributed the only $25,000 in initial startup capital provided to Noveon. (*Dillon Decl. I* Ex. 20 at 6:11–13; see *id.* Ex. 25.) The corporation purchased few tangible assets and operated out of Defendant Lopez and Francis Lopez's home. (*F. Lopez Decl.* 5:23–24.) Noveon hired independent contractors to perform consulting and programming services. (*Id.* at 5:22–23.)

Noveon generated – (negative) $29,043.55 in net income for the period from June 15, 2003, to December 31, 2003.[6] (*Dillon Decl. I* Ex. 22.) In 2004, the corporation

---

[6] In his Declaration, Francis Lopez references a Profit and Loss Statement for Noveon's first operational quarter ending September 30, 2003, (*F. Lopez Decl.* 6:6–11; a Comprehensive Profit and Loss Statement for July 2003 through May 2006, (*Id.* at 10:25–11:1); and Accounts Payable and Accounts Receivable Aging Summaries dated May 31, 2008, (*Id.* at 11:7–10). These documents are attached to the Declaration of Madeleine Lopez as Exhibits 10, 18, and 19. Plaintiff objects to these Exhibits on the ground that Defendant Lopez failed to provide the documents as part of her initial disclosures under Fed. R. Civ. P. 26(a), failed to supplement her initial disclosures and discovery responses under Fed. R. Civ. P. 26(e), and failed to produce the documents during discovery. (*Evidentiary Objs.* 2:5–8.)

On January 17, 2008, Plaintiff served Defendant Lopez with a variety of discovery requests. (*Evidentiary Objs.* at 3:13–14.) Plaintiff's Requests for Production requested eighty-nine categories of documents, including any and all of Noveon's financial statements for the years 2003 through 2007 (*Supplemental Declaration of Timothy P. Dillon in Supp. Of Pl.'s Mot. for Summ. J. Against Madeleine Lopez* [hereinafter "*Supplemental Dillon Decl.*"] Ex. 39 at 9:14–17.) After Defendant Lopez provided vague and incomplete responses to Interrogatories and Requests for Production, Plaintiff moved to compel further discovery. (See Doc. No. 134.) Defendant Lopez represented to Judge Bencivengo that she had no further information about Noveon's financial condition in her possession. (See Id.) Accordingly, Judge Bencivengo denied Plaintiff's motion and declared Defendant Lopez's discovery responses complete. (Id.)

"[Fed. R. Civ. P.] 37(c)(1) . . . provides that if a party fails to make disclosure or to supplement responses as required by [Fed. R. Civ. P.] 26(a), that party shall not present at trial or in motions any evidence not so disclosed, unless there is 'substantial justification' for the failure to disclose or the 'failure is harmless.'" Continental Lab. Prods. v. Medax Int'l, Inc., 195 F.R.D. 675, 676 (S.D. Cal. 2000) (Whelan, J.) (quoting Fed. R. Civ. P. 37(a)(1)).

Plaintiff's objection is well taken. Considering that Defendant Lopez represented to Judge Bencivengo that she had no further information or documents in her possession, the Court finds that Defendant Lopez's failure to disclose these documents was not substantially justified within the meaning of Rule 37(a)(1). See Fitz, Inc. v. Wilson Plastics Co., 174 F.R.D. 587, 591 (D.N.J. 1997) ("'Substantial justification' requires 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" (quoting Nguyen v. IBP, Inc., 172 F.R.D. 675, 680 (D. Kan. 1995))). Nor is Defendant Lopez's failure to produce the documents harmless. Plaintiff had no opportunity to conduct further discovery regarding the documents, to address the documents in the instant Motion, or to verify the documents' authenticity. Cf. Continental Lab. Prods., 195 F.R.D. at 677 (excluding affidavits of expert witnesses filed with summary judgment motion and noting that non-moving party's failure to timely designate experts unfairly prejudiced moving party). Accordingly, the Court **SUSTAINS** Plaintiff's Objection and deems Defendant Lopez's Exhibits 10, 18, and 19 inadmissible for all further proceedings.

generated a net income of –$4,515.53. (M. *Lopez Decl.* Ex. 12.) Noveon's April 30, 2007 corporate bank account statement lists a balance of –$3.00. (*Dillon Decl. I* Ex. 21.)

Because of its poor financial health, Noveon had difficulty meeting its financial obligations as they matured. (*Dillon Decl. I* 8:1–2.) Defendant Bears, for instance, testified that he never received timely payments from Noveon for his services. (*Id.* Ex. 16 at 42:17.) Francis Lopez testified that Noveon "always was very short on cash." (*Id.* Ex. 15 at 63.) As a result, Defendant Lopez and Francis Lopez often paid Noveon's independent contractors out of a personal account, subject to reimbursement from Noveon. (*Id.*)

### 2. *Respect for Noveon's Corporate Formalities*

#### a. **Compliance with Approved Appointment Process**

In conjunction with Noveon's incorporation on June 25, 2003, the corporation issued 25,000 shares of stock to Defendant Lopez. (*Dillon Decl. I* Ex. 2.) Defendant Lopez endorsed the stock certificate as Secretary of the corporation, and her husband endorsed the certificate as President of the corporation. (*Id.*) Corporate minutes filed on an annual basis for the years 2004 through 2007 show that Defendant Lopez held the office of Secretary throughout Noveon's existence. (*Id.* Ex. 7.) The minutes also show that Francis Lopez acted as President, General Manager, and Chief Financial Officer at various times during Noveon's operating life. (*Id.*)

While Defendant Madeleine and Francis Lopez were Noveon's only Directors, both holding office for the life of the corporation, their precise roles are sometimes unclear. (*Id.* Ex. 8.) On July 29, 2003, Defendant Lopez applied for a corporate bank account on behalf of Noveon, at which time she represented herself as an owner, President, and Secretary of Noveon. (*Id.*) On or about March 21, 2005, Francis Lopez, on behalf of Noveon, executed an Application by Foreign Corporation for Authorization to Transact Business in Florida (the "Application"). (*Id.* Ex. 9.) The Application listed Defendant Lopez as a Director, Vice President, Secretary, and Treasurer of Noveon.

(*Id.*)  On May 4, 2005, Defendant Lopez executed Noveon's 2004 Delaware Franchise Tax Report (the "Report").  (*Id.* Ex. 10.)  The Report listed Defendant Madeleine Lopez as a Director of Noveon, and Defendant Lopez signed the Report as the President and sole officer of the corporation.  (*Id.*)

Defendant Lopez and Francis Lopez also made various representations regarding their respective positions within Noveon in depositions and other discovery responses in connection with ancillary state and federal litigation.  (See *Id.* Ex. 11 at 8–10; *Id.* Ex. 13 at 2:22–23; *Id.* Ex. 14 at 36:13–15, 40:11–13, 41:20–23.)  Often, Defendant Lopez and Francis Lopez's representations regarding their positions within Noveon were wholly inconsistent with both Noveon's corporate minutes and Defendant Lopez and Francis Lopez's prior representations.  (Compare *Id.* Ex. 11 at 8–10 (indicating that Defendant Madeleine Lopez was the sole Shareholder, sole Director, and President of Noveon), with *Id.* Ex. 14 at 37:15–18 (indicating that Defendant Lopez was a non-employee owner of Noveon, and that Francis Lopez was the only employee of Noveon).)

### b.  Maintenance of Corporate Records

Defendant Lopez was not perfectly compliant with Noveon's corporate record keeping requirements.  Defendant Lopez and Francis Lopez made many small, short-term loans to Noveon from their personal accounts.  (*Id.* Ex. 15 at 43–45.)  Noveon's Board of Directors (the "Board")—Defendant Lopez and Francis Lopez—did not approve the loans in writing.  (*Id.*)  Neither Noveon nor its Board issued any promissory notes or other writings to document the terms of the loans.  (*Id.*)

Francis Lopez also allegedly licensed transportation software that he owned to Noveon.  (*Dillon Decl. I* 6:8–11; see *Id.* Ex. 11 at 10:7–18.)  Although Francis Lopez allegedly received partial payment for the license in 2004, despite Plaintiff's repeated discovery requests, Noveon never produced documentation of any purported agreement between Francis Lopez and Noveon.  (*Dillon Decl. I* 6:8–11; *Id.* Ex. 11 at 10:7–13.)

Noveon also failed to execute any type of formal employment agreement or salary arrangement with its principals (Defendant Lopez and Francis Lopez) or with its other contract employees. (*Dillon Decl. I* 6:17–7:7.) Noveon's Board never approved any type of compensation to be paid to Directors (see *Id.* Ex. 7) pursuant to the corporation's bylaws (*Id.* Ex. 6 at 10). Neither Defendant Lopez nor Francis Lopez drew a salary from Noveon. (*Id.* Ex. 11 at 10:1–3; *Id.* Ex. 20 at 6:7–9.) Defendant Bears testified at his April 16, 2008 deposition that he never had more than an oral employment agreement with Noveon. (See *Id.* Ex. 16 at 39–42.)

### c. Compliance with Tax and Reporting Obligations

Additionally, Noveon inconsistently satisfied its federal and state tax and reporting requirements, eventually causing Noveon to shed its corporate status. The corporation timely complied with its Delaware franchise tax obligation for the year 2003 and made a late payment for 2004. (*Dillon Decl. I* Ex. 4.) However, Defendant Bears testified that, during his employment with Noveon, the corporation never provided him with either a W-2 or a 1099 for tax purposes.[7] (*Id.* Ex. 16 at 41:3–5, 41:19–20.)

On September 15, 2006, Florida revoked Noveon's license to transact business in the State for failure to meet annual reporting requirements. (*Id.* Ex. 5.) On March 1, 2007, Delaware revoked Noveon's corporate charter for failure to pay annual corporate franchise taxes. (*Id.* Ex. 4.) However, as early as June 15, 2006, Noveon's yearly minutes show that the corporation had already become defunct due to the instant litigation. (*Id.* Ex. 7.)

---

[7] Plaintiff also asserts that Noveon only filed one tax return during its five years of operation. (*Pl.'s Mem. of P. & A. I* 8:13–14; see also *Dillon Decl. I* at 5:20–6:1.) Plaintiff attempts to support this assertion by pointing to the deposition of Francis Lopez, attached to the Declaration of Timothy P. Dillon as Exhibit 15. (*Dillon Decl. I* 6 n.14.) However, the cited pages are notably missing from the deposition transcript. (See *Id.* Ex. 15 at 67, 76.) This failure to attach documents referenced violates Fed. R. Civ. P. 56(e). See Fed. R. Civ. Proc. 56(e) (affidavits submitted for summary judgment purposes must be based on personal knowledge, set forth admissible facts and any documents referred to therein must be submitted with the affidavit). Accordingly, the Court cannot consider this evidence on summary judgment.

### 3. *Commingling of Noveon Funds*

Presumably due to Noveon's poor financial health, Defendant Lopez and Francis Lopez often made relatively small short-term "loans" to the corporation from their personal accounts. (*Dillon Decl. I* Ex. 15 at 43–45.) Between November 2003 and June 2004, Defendant Lopez and Francis Lopez issued thirteen checks to Noveon for a total of $21,000. (*Id.* Exs. 24, 25.) During approximately the same period, Noveon issued twelve checks to Defendant Lopez and Francis Lopez for a total of $31,853.60.[8] (*Id.* Exs. 26, 27.) As discussed above, these loans were neither approved by Noveon's Board nor documented by any promissory notes. (*Id.* Ex. 15 at 43–45.)

Between July 2003 and August 2005, Defendant Lopez and Francis Lopez made seventeen payments to Noveon's contract employees from personal accounts. (*Id.* Exs. 28, 29.) Francis Lopez stated because that Noveon often received checks from out-of-state customers, (*F. Lopez Decl.* at 8:22–24), and because Noveon's bank placed holds on out-of-state checks, Defendant Lopez or Francis Lopez often paid Noveon's employees from their personal accounts, subject to reimbursement from Noveon (*Id.* at 22–28; see also *Dillon Decl. I* Ex. 15 at 62–67).

Noveon also paid for a variety of Defendant Lopez's and Francis Lopez's personal expenses, both directly and by reimbursement. (*Dillon Decl. I* 9:4–7, 9:13–10:11.) Defendant Lopez filed expense reports and Noveon reimbursed Defendant Lopez for car washes, gasoline, air travel, and other expenses. (*Id.* Ex. 30.) Noveon also occasionally

---

[8] In his Declaration, Francis Lopez references a Deposit Detail showing payments made to Noveon during its operating life (*F. Lopez Decl.* 7:7–11) attached to the Declaration of Madeleine Lopez as Exhibit 13. (*M. Lopez Decl.* Ex. 13.) Plaintiff objects to this Exhibit on the ground that Defendant Lopez failed to provide the document as part of her initial disclosures under Fed. R. Civ. P. 26(a), failed to supplement her initial disclosures and discovery responses under Fed. R. Civ. P. 26(e), and failed to produce the document during discovery. (*Evidentiary Objs.* at 2:5–8.)

Plaintiff requested—and Defendant Lopez failed to produce—documents reflecting payments received by Noveon from its customers. (See *Supplemental Dillon Decl.* Ex. 39 at 9:28–10:3.) For the reasons discussed in Footnote 6, above, the Court **SUSTAINS** Plaintiff's objection and deems Defendant Lopez's Exhibit 13 inadmissible for all further proceedings.

paid directly for cable service at the Lopez family's residence, (*Id.* Exs. 31, 32);[9] for the Lopez family's health insurance, (*Id.* Ex. 33); for the Lopez family's auto insurance, (*Id.* Ex. 34); for Francis Lopez's life insurance, (*Id.* Ex. 35); for Defendant Lopez's and Francis Lopez's credit cards, (*Id.* Ex. 36); and for a variety of other expenses, (*Id.* Ex. 37). The majority of these expenses were paid occasionally out of Noveon's account, and occasionally out of the personal accounts of Defendant Lopez and Francis Lopez. (*Id.* Exs. 31–37.) Defendant Lopez maintains that these payments constituted legitimate corporate expenses.[10] (*F. Lopez Decl.* 7:12–8:19.)[11]

### D. Bears's Involvement with Prism and Noveon

Defendant Bears worked for Prism as a programmer from March 2001 until Prism's dissolution in 2003. (*Stanly Decl.* 3:1–2.) As part of his employment with Prism,

---

[9] In his Declaration, Francis Lopez references a Transaction List detailing payments from Noveon to Cox Communications (*F. Lopez Decl.* 7:27), attached to the Declaration of Madeleine Lopez as Exhibit 14. (*M. Lopez Decl.* Ex. 14.) Plaintiff objects to this Exhibit on the ground that Defendant Lopez failed to provide the document as part of her initial disclosures under Fed. R. Civ. P. 26(a), failed to supplement her initial disclosures and discovery responses under Fed. R. Civ. P. 26(e), and failed to produce the document during discovery. (*Evidentiary Objs.* at 2:5–8.)
 Plaintiff requested—and Defendant Lopez failed to produce—documents reflecting Noveon's payment of expenses. (See *Supplemental Dillon Decl.* Ex. 39 at 8:14–16.) For the reasons discussed in Footnote 6 above, the Court **SUSTAINS** Plaintiff's Objection and deems Defendant Lopez's Exhibit 14 inadmissible for all further proceedings.

[10] In his Declaration, Francis Lopez references several Transaction Reports detailing payments by Noveon and its principals to subcontractors, loans to Noveon from Defendant Lopez, and payments by Noveon to various vendors (*F. Lopez Decl.* 9:4–7), attached to the Declaration of Madeleine Lopez as Exhibits 15–17. (*M. Lopez Decl.* Exs. 15–17.) Plaintiff objects to these Exhibits on the ground that Defendant Lopez failed to provide the documents as part of her initial disclosures under Fed. R. Civ. P. 26(a), failed to supplement her initial disclosures and discovery responses under Fed. R. Civ. P. 26(e), and failed to produce the documents during discovery. (*Evidentiary Objs.* 2:5–8.)
 Plaintiff requested—and Defendant Lopez failed to produce—these documents during discovery. (See *Supplemental Dillon Decl.* Ex. 39 at 8:20–26, 12:16–17; *Dillon Decl. I* Ex. 19 at 10:27–11:8.) For the reasons discussed in Footnote 6 above, the Court **SUSTAINS** Plaintiff's Objection and deems Defendant Lopez's Exhibits 15–17 inadmissible for all further proceedings.

[11] Plaintiff objects on evidentiary grounds to various other statements contained in and attached to the Declarations of Defendant Lopez and Francis Lopez. (*Evidentiary Objs.* 11–13.) The Court does not address or rely on these statements as they are generally irrelevant to the issue of whether Defendant Lopez acted as the alter ego of Noveon. Accordingly, the Court **OVERRULES** Plaintiff's objections as moot.

Defendant Bears signed a variety of employment agreements, including a Form of Confidentiality and Inventions Agreement (the "Confidentiality Agreement"). (*Stanly Decl.* 3:2–6; <u>see</u> <u>also</u> *id.* Ex. C.) The Confidentiality Agreement imposed a variety of affirmative obligations on Defendant Bears regarding Prism's proprietary information, which included the Programs. (<u>See</u> *Id.* Ex. C.)

In July 2003, Noveon hired Defendant Bears to perform programming work on the Programs. (*Decl. of Timothy P. Dillon in Supp. of Pl.'s Mot. for Partial Summ. J. Against James Albert Bears* [hereinafter "*Dillon Decl. II*"] Ex. C at 4:10–16.) As a Noveon employee, Bears programmed transportation management software that was "substantially similar to the software Prism . . . utilized to service its customers prior to June 2003." (*Id.* at 1:24–25, 4:15–16.) In late 2005, Noveon discontinued its monthly salary payments to Defendant Bears, and Bears terminated his employment relationship with the corporation. (*Dillon Decl. II* Ex. C at 4:11–12.)

### E.    Procedural History as to Bears

On February 28, 2007, Plaintiff amended its initial complaint against Noveon to assert claims against Defendant Bears for copyright infringement, breach of contract, and violation of 17 U.S.C. § 1202. (*Req. for Judicial Notice in Supp. of Pl.'s Mot. for Summ. J. Against James Albert Bears* [hereinafter "*RJN II*"] Ex. 3 at 22:8–23–15, 26:26–29:8.)[12] Bears failed to timely respond to discovery requests propounded by Plaintiff. (<u>See</u> *RJN II* Exs. 4, 5.) On March 13, 2008, as a result of Bears's continued failure to participate in discovery, Judge Bencivengo deemed twenty-one Requests for

---

[12] Plaintiff requests that the Court judicially notice five documents filed in connection with the instant litigation. (<u>See</u> *RJN II.*) A district court may properly take judicial notice of its own records. <u>Kelly v. Johnston</u>, 111 F.2d 613, 615 (9th Cir. 1940); <u>see also</u> <u>St. Louis Baptist Temple</u>, 605 F.2d at 1172 ("[A] court may . . . take judicial notice, whether requested or not[,] of its own records and files." (citation omitted)). Accordingly, the Court **GRANTS** Plaintiff's request for judicial notice.

Admission propounded on Bears as admitted.[13] (*RJN II* Ex. 4 at 2:13–15.) After Bears

finally served interrogatory responses and produced responsive documents to Plaintiff

on March 18, 2008, Judge Bencivengo deemed Bears's responses complete and

precluded Bears from providing further discovery responses without a showing of good

cause. (*RJN II* Ex. 5.)

Bears's opposition to the instant motion for summary judgment was due June 30,

2008. <u>See</u> S.D. Cal. Civ. R. 7.1(e.1). On July 9, 2008, only five days prior to the

hearing date set for this matter—past the time Plaintiff's reply was due—Bears

submitted opposition papers.[14] (Doc. No. 145.) Considering Bears's consistently

---

[13] Judge Bencivengo deemed admitted, *inter alia*, Requests for Admission Nos. 15 and 16. (*RJN II* Ex. 4 at 2:13–15.) Request for Admission No. 15 asked Bears to "[a]dmit that [Bears] willfully infringed on Plaintiff, Enterprise Technology Holdings, Inc.'s copyrights." (*Dillon Decl. II* Ex. G at 3:12–13.) Request for Admission No. 16 asked Bears to "[a]dmit that [Bears] wilfully violated 17 U.S.C. § 1202." (*Id.* at 2:14.)

[14] The Court originally set the hearing date for these motions as July 7, 2008, making Bears's opposition due June 23, 2008. (Doc No. 132); <u>see</u> S.D. Cal. Civ. R. 7.1(e.2). On June 30, 2008, following the Court's acceptance of Defendant Lopez's discrepant opposition, the Court sua sponte continued the hearing date for both motions to July 14, 2008, giving Bears an additional week to respond. (Doc. No. 138.) Thus, Bears filed his opposition papers sixteen days after the original deadline and nine days after the revised deadline. Given the untimeliness of Bears's filing, the Court rejected his opposition.
On July 28, 2008, Bears once again attempted to file his opposition papers. (<u>See</u> Doc. No. 147.) In order to give Bears, a *pro se* defendant, the benefit of the doubt, the Court elected to accept Bears's opposition for the purposes of review. (Id.) The Court still considers his filing untimely.
Bears's only colorable defense relates to a settlement agreement entered into between himself and Alan Stanly regarding two San Diego Superior Court cases, case numbers GIN029692 and GIN043385 (collectively, the "state actions"). (*Stanly Decl.* 4:21–5:2.) The state actions concerned events surrounding the breakup of Prism and the formation of Noveon. (<u>See</u> *Id.* Ex. D.) The subject matter of the settlement agreement encompassed the state action and released "any and all disputes by and between Bears and Stanly insofar as they relate[d] to [the state actions] and any and all matters which may have or conceivably could have been asserted in [the state actions]. . . ." (*Id.* Ex. E at 2.) As Plaintiff correctly points out, federal courts have exclusive jurisdiction over copyright claims. 28 U.S.C. § 1338(a). Furthermore, Bears's copyright infringement was ongoing at the time of, and continued following, the settlement agreement, whereas the settlement agreement only released claims arising out of relationships between the parties prior to the date of the agreement. Accordingly, because these claims could not have conceivably been asserted in the state actions and Bears continued his infringing activity after the agreements were executed, Bears's defense that he is protected by the settlement agreement lacks merit.
Concurrently with his opposition papers, Bears filed a Motion for Leave to Admit Request for Admission Answers. (Doc. No. 148.) A party may withdraw or amend admissions only if (1) withdrawal would aid in the presentation of the merits of the case; and (2) withdrawal would not prejudice the party who requested the admission. <u>Conlon v. United States</u>, 474 F.3d 616, 625 (2007) (citing Fed. R. Civ. P. 36(b)). Even if vacating the issues

1  dilatory conduct during discovery, the Court rejected Bears's opposition on the ground

2  that—among other issues—it was not timely filed.  (Id.)

3

4  **II.   LEGAL STANDARD**

5      Summary judgment is appropriate under Rule 56(c) where the moving party

6  demonstrates the absence of a genuine issue of material fact and entitlement to

7  judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477

8  U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it

9  could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

10  248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a

11  material fact is genuine if "the evidence is such that a reasonable jury could return a

12  verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

13      A party seeking summary judgment always bears the initial burden of establishing

14  the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving

15  party can satisfy this burden in two ways: (1) by presenting evidence that negates an

16  essential element of the nonmoving party's case; or (2) by demonstrating that the

17  nonmoving party failed to make a showing sufficient to establish an element essential

18  to that party's case on which that party will bear the burden of proof at trial.  Id. at 322-

19  23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary

20  judgment."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

21  (9th Cir. 1987).

22      "The district court may limit its review to the documents submitted for the

23  purpose of summary judgment and those parts of the record specifically referenced

24  therein."  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1030 (9th Cir.

25

26  deemed admitted by Bears in discovery would aid in the presentation of the merits of his
   claims, the Court concludes that Plaintiff would be prejudiced if the Court granted Bears leave
27  to file responses to the original requests for admission.  Bears chose to wait greater than four
   months before seeking leave to file responses, and in the interim, Plaintiff relied on the issues
28  deemed admitted in filing its motion for summary judgment.  Accordingly, the Court **DENIES**
   Bears's motion.

2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allen</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) (<u>citing</u> <u>Richards v. Combined Ins. Co.</u>, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995) (<u>citing</u> <u>Anderson</u>, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324 (<u>quoting</u> Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." <u>Anderson</u>, 477 U.S. at 255.

Rule 56(d) provides for partial summary judgment. <u>See</u> Fed. R. Civ. P. 56(d) ("[T]he court...shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."). Under Rule 56(d), the court may grant summary judgment on less than the non-moving party's whole claim. <u>Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.</u>, 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.). Partial summary judgment is a

mechanism through which the Court deems certain issues established before trial. <u>Lies</u> <u>v. Farrell Lines, Inc.</u>, 641 F.2d 765, 769 n.3 (9th Cir. 1981) (quoting 6 Moore's Federal Practice ¶ 56.20 (3.–2) (2d ed. 1976)). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." <u>Id.</u>

### III. DISCUSSION

#### A. Noveon Was Not Defendant Lopez's Alter Ego

Plaintiff argues that several factors require the legal conclusion that Noveon was Defendant Lopez's alter ego, including Defendant Lopez's failure to abide by Noveon's corporate formalities, her failure to provide the corporation with adequate startup capital, and her commingling of personal with corporate funds. (*Id.* at 15:6–19.) Plaintiff further argues that injustice would result if the Court declined to hold Defendant Lopez liable as Noveon's alter ego, because "Plaintiff would be left with no party responsible for the illegal, wrongful, and willful conduct of Noveon." (*Reply Brief in Supp. of Pl.'s Mot. for Summ. J. Against Madeleine Lopez* [hereinafter "*Reply*"] 2:19–20.)

In response, Defendant Lopez argues that she and Francis Lopez abided by Noveon's corporate formalities during the corporation's operating life, (*Opp'n to Mot. for Summ. J.* [hereinafter "*Opp'n*"] 5:20–23); that Defendant Lopez's initial capital contribution was sufficient for "a non-asset, service based business," (*Id.* at 3:10–17); and, that Plaintiff "selected a tiny number of [questionable payments] to make it seem that there was an actual commingling issue," (*Id.* at 3:20–27). Defendant Lopez also asserts that the mere fact that Plaintiff's judgment against Noveon may remain unsatisfied does not establish a sufficiently inequitable result to justify piercing the corporate veil. (*Id.* at 10:1–9.)

Federal courts "'apply the law of the forum state in determining whether a corporation is an alter ego' of an individual." <u>SEC v. Hickey</u>, 322 F.3d 1123, 1128 (9th Cir. 2003) (quoting <u>Towe Antique Ford Found. v. IRS</u>, 999 F.2d 1387, 1391 (9th Cir.

1993)); see also Wechsler v. Macke Int'l Trade, Inc., 436 F.3d 1286, 1295 (Fed. Cir. 2007) (citing Towe Antique Ford Found, 999 F.2d at 1391) (applying California law in determining whether to hold shareholder-defendant liable for corporation's patent infringement).[15]

_____

[15] Plaintiff cites Laborers Clean-Up Contract Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc., 736 F.2d 516, 523 (9th Cir. 1984), for the proposition that, "[i]n considering whether to disregard the corporate form, [federal courts] apply federal substantive law, although [federal courts] may look to state law for guidance." (Pl.'s Mem. of P. & A. I at 13:13–15.) However, Laborers Clean-Up, which involved an action brought under the Labor Management Relations Act ("LMRA") and the Employment Retirement Income Security Act ("ERISA"), is inapposite. In Seymour v. Hull & Moreland Engineering, 605 F.2d 1105, 1109 (9th Cir. 1979), cited in Laborers Clean-Up, the Ninth Circuit noted that "the paramount policy served by the remedy provided under section 301(a) [of the LMRA] is consistency in the enforcement of labor contracts. The overriding federal policy of industrial peace and productivity is best effectuated if collective bargaining agreements is best effectuated if collective bargaining agreements are interpreted and enforced in a uniform manner." This desire for uniformity necessitated the development of a federal alter ego doctrine. See Id. at 1111 ("Our own circuit has developed certain guidelines in dealing with disregard of the corporate entity."); see also Note, Piercing the Corporate Law Veil: the Alter Ego Doctrine Under Federal Common Law, 95 Harv. L. Rev. 853, 859 (1982) (discussing federal courts' treatment of alter ego issues arising under federal labor statutes).

No equivalent policy of uniformity obtains in the instant action. Although the Court's jurisdiction is based on Plaintiff's copyright infringement and 17 U.S.C. § 1202 claims, Plaintiff's alter ego cause of action does not implicate the interpretation of either federal statute. Accordingly, the Court will apply the alter ego doctrine of the forum state, here California, pursuant to Towe Antique Ford Foundation and its progeny. 999 F.2d at 1391; Hickey, 322 F.3d at 1128. However, Plaintiff's reliance on Laborers Clean-Up and the attendant Ninth Circuit law is not fatal, nor does the Court require further briefing on California law. Plaintiff "looks through" to California law to support all of its alter ego claims. (See, e.g., Pl.'s Mem. of P. & A. I 13:25–14:4.) Similarly, Defendant Lopez premises her opposition to Plaintiff's Motion on California law. (See, e.g., Opp'n 7:7–8:1.)

Furthermore, California's alter ego doctrine is substantially similar to the Ninth Circuit's. See Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc., 969 F.2d 764, 769 n.3 (9th Cir. 1992) ("California law on piercing the corporate veil is substantially similar to the rule announced in our cases."). Compare UA Local 343 of United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Indus. of United States and Canada v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1475 (9th Cir. 1994) ("In deciding whether to pierce the corporate veil [federal courts] consider three factors: '[1]the amount of respect given to the separate identity of the corporation by its shareholders, [2] the degree of injustice visited on the litigants by recognition of the corporate entity, and [3] the fraudulent intent of the incorporators.'" (second, third, and fourth alterations in original) (quoting Seymour, 605 F.2d at 1111)), with Automotriz Del Golfo De Cal. v. Resnick, 306 P.2d 1, 3 (Cal. 1957) ("[T]he two requirements for application of [the alter ego] doctrine are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow."). The omission of the third prong of the Ninth Circuit's test (concerning "the fraudulent intent of the incorporators") from California's test does not prejudice either party. The second and third prongs of the Ninth Circuit analysis may be established in the alternative, and Plaintiff relies only on the second ("inequitable result") prong that is common to both the Ninth Circuit and the California tests. Bd. of Trs. of Mill Cabinet Pension Tr. Fund for N. Cal. v. Valley Cabinet & Mfg. Co., 877 F.2d 769, 773 (9th

"Alter ego is an extreme remedy, sparingly used." <u>Sonora Diamond Corp. v. Superior Court</u>, 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000). "Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution." <u>Las Palmas Assocs. v. Las Palmas Ctr. Assocs.</u>, 1 Cal. Rptr. 2d 301, 317 (Cal. Ct. App. 1991). Accordingly, the party seeking to pierce the corporate veil bears the burden of pleading and establishing alter ego liability. <u>See Minifie v. Rowley</u>, 202 P. 673, 676 (Cal. 1921); <u>Mid-Century Ins. Co. v. Gardner</u>, 11 Cal. Rptr. 2d 918, 922 (Cal. Ct. App. 1992) ("It is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity.").

"The conditions under which the corporate entity may be disregarded vary according to the circumstances of the case and the matter is particularly within the province of the trial court." <u>Jack Farenbaugh & Son v. Belmont Constr., Inc.</u>, 240 Cal. Rptr. 78, 83 (Cal. Ct. App. 1987); <u>see</u> <u>also</u> <u>Mesler v. Bragg Mgmt. Co.</u>, 702 P.2d 601, 606 (Cal. 1985) ("There is no litmus test to determine when the corporate veil will be pierced; rather[,] the result will depend on the circumstances of each particular case."); <u>Associated Vendors, Inc. v. Oakland Meat Co.</u>, 26 Cal. Rptr. 806, 813 (Cal. Ct. App. 1963) ("[S]uch determination is primarily one for the trial court and is not a question of law.").

The relevant case law discloses two general conditions which must be present before a court may pierce the corporate veil:

> First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.

<u>Sonora Diamond Corp.</u>, 99 Cal. Rptr. 2d at 836.

---

Cir. 1989). Accordingly, the Court concludes that the parties have sufficiently briefed the issue under California and analogous alter ego doctrines such that the Court may apply California law without working an injustice on either party.

05cv2236W

Courts have relied on a multitude of factors to establish a "unity of interests" between the insolvent corporation and the shareholder-defendant. See Associated Vendors, Inc., 26 Cal. Rptr. at 813–15 (discussing greater than a dozen factors). Relevant factors include the following:

> [T]he commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; . . . the failure to maintain adequate corporate minutes or records; . . . the ownership of all the stock by a single individual or family; the domination or control of the corporation by the stockholders; the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; [and] the disregard of formalities and the failure to maintain arm's-length transactions with the corporation . . . .

Mid Century Ins. Co., 11 Cal. Rptr. 2d at 923 n.2. No single factor dominates over the others. See Harris v. Curtis, 87 Cal. Rptr. 614, 617–18 (Cal. Ct. App. 1970) (holding that inadequate capitalization alone does not render a shareholder-defendant liable for a corporation's obligations); Associated Vendors, Inc., 26 Cal. Rptr. at 816 ("Evidence of inadequate capitalization is, at best, merely a factor to be considered by the trial court in deciding whether or not to pierce the corporate veil."). But see Automotriz Del Golfo De Cal. v. Resnick, 306 P.2d 1, 4 (Cal. 1957) (suggesting, in dicta, that "illusory or trifling" capitalization may alone be sufficient grounds for disregarding the corporate entity). Rather, "courts must look at all the circumstances to determine whether the doctrine should be applied." Sonora Diamond Corp., 99 Cal. Rptr. 2d at 836.

**Initial Capitalization:** Inadequate initial capitalization is a primary factor for consideration in determining whether to hold a shareholder-defendant liable for the debts of a corporation. See Minton v. Cavaney, 364 P.2d 473, 475 (Cal. 1961); Automotriz Del Golfo De Cal., 306 P.2d at 4. "'If a corporation is organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. . . . If the capital is illusory or trifling compared with the business to be done and the risk of loss, this is a ground for denying the separate entity privilege.'" Automotriz Del Golfo De Cal., 306

P.2d at 4 (quoting Henry Winthrop Ballantine, <u>Ballantine on Corporations</u> 302–03 (1946)). Courts holding the shareholder-defendant liable for the debts of an inadequately capitalized corporation have relied on such factors as a complete failure to issue stock, <u>Minton</u>, 364 P.2d at 474; <u>Automotriz Del Golfo De Cal.</u>, 306 P.2d at 4; a trivial capital contribution in comparison to the corporation's expected obligations, <u>Rosen v. E.C. Losch, Inc.</u>, 44 Cal. Rptr. 377, 383 (Cal. Ct. App. 1965) ($856 contribution in comparison to agreement to perform $200,000 subcontract); and the provision of loans and guarantees on indebtedness in lieu of actual equity capital, <u>Linco Servs., Inc. v. DuPont</u>, 19 Cal. Rptr. 196, 197 (Cal. Ct. App. 1966).

The plaintiff seeking to establish alter ego liability must come forward with some facts demonstrating that the shareholder-defendant failed to adequately capitalize the corporation. <u>Carlesimo v. Schwebel</u>, 197 P.2d 167, 174 (Cal. Ct. App. 1948). In <u>Carlesimo</u>, two shareholders contributed $1,221.82 in capital to a corporation formed to sell groceries. In rejecting the plaintiff's alter ego claim, the court noted:

> No evidence was introduced by either side (and the burden was on the plaintiff) as to what would constitute a reasonable capital for such a company. Practically no evidence was introduced as to the nature or amount of the business transacted. All we know is that the corporation was engaged in buying and selling groceries . . . .

<u>Id.</u> at 172.

The mere fact that a corporation fails to turn a profit or eventually becomes insolvent is not conclusive evidence of inadequate capitalization—rather, the relevant inquiry is whether the shareholder-defendant "'in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities.'" <u>Automotriz Del Golfo De Cal.</u>, 306 P.2d at 4 (quoting Ballantine, <u>supra</u>, at 302–03).

Here, Plaintiff fails to demonstrate that Defendant Lopez's $25,000 initial contribution was "illusory or trifling compared with the business to be done and the risk of loss." <u>Id.</u> Plaintiff directs the Court's attention to the fact that Noveon was operating at a $29,043.55 loss within its first six months of operations. (*Pl.'s Mem. of P. & A. I* 9:26–28.) However, Noveon recorded a net income of –$4,515.53 for the year ending

December 2004—a significantly smaller loss than the corporation generated during its first six months of operations. (*M. Lopez Decl.* Ex. 12.) From these figures, a reasonable jury could conclude that Noveon's revenues were trending upward. Under <u>Automotriz</u>, the fact that Noveon failed to generate a profit, without more, does not necessarily suggest that Defendant Lopez inadequately capitalized the corporation.

Furthermore, like the plaintiff in <u>Carlesimo</u>, Plaintiff here fails to introduce evidence demonstrating what would have been an adequate initial capitalization for Noveon or a similar corporation. On the other hand, Defendant Lopez argues that her initial "investment represented a calculated estimate" of Noveon's capital requirements, which Francis Lopez based on his considerable experience in the transportation management industry and the non-asset-intensive nature of the corporation. (*Opp'n* 3:11–13; *F. Lopez Decl.* 5:14–25.) In accordance with Francis Lopez's projections, Noveon issued 25,000 shares of common stock in exchange for a contribution of $25,000 in unencumbered, liquid capital. (*Dillon Decl. I* Ex. 2; *Id.* Ex. 20 at 6:11–13; *Id.* Ex. 25.) Plaintiff argues that Defendant Lopez should have foreseen—and prepared for—substantial prospective liability for copyright infringement. (*Reply* 10:10–15.) However, entrepreneurs cannot be expected to prepare for every remote contingency, including the possibility of adverse legal action.

Finally, Plaintiff asserts that Defendant Lopez and Francis Lopez's practice of paying Noveon's contractors out of their personal checking accounts warrants a finding that Defendant Lopez did not adequately capitalize the corporation. While this practice may be evidence suggesting an impermissible commingling of funds, it does not necessarily demonstrate that the corporation lacked sufficient capital to pay its debts as they matured. Francis Lopez suggests that he and Defendant Lopez only advanced Noveon's contractors their compensation after the corporation received checks from out-of-state customers. (*F. Lopez Decl.* 8:22–28.) Noveon was not entirely without funds to pay its employees, as Plaintiff seems to suggest. Rather, the corporation could not access the funds that it did have at the time it needed to pay its contractors. A

reasonable jury could conclude from this evidence that Defendant Lopez did not blatantly disregard the corporate form.

Indulging every reasonable inference in favor of the non-moving party, as is warranted on a summary judgment motion, the Court finds that genuine issues of material fact remain regarding whether Defendant Lopez's initial capitalization of Noveon was reasonable in light of its prospective obligations.

**Respect for Corporate Formalities:** Courts have also relied on the shareholder-defendant's "disregard of legal formalities and . . . failure to maintain arm's length relationships among related entities" in determining whether to pierce the corporate veil. <u>Associated Vendors, Inc.</u>, 26 Cal. Rptr. at 815. In <u>Stark v. Coker</u>, 129 P.2d 390, 394 (Cal. 1942), the California Supreme Court noted that the defaulted corporation held no board of directors' meetings, elected no officers, and filed no corporate minutes. The shareholder-defendant controlled all aspects of the business and "kept the books of the corporation although his wife was secretary." <u>Id.</u> at 395. The court held that these and other facts justified the trial court's decision to disregard the corporate entity and hold the shareholder-defendant liable for the corporation's debts. <u>Id.</u> In contrast, the fact that a corporation regularly held corporate meetings and maintained corporate records may suggest that the shareholder-defendant sufficiently respected the separate corporate entity. <u>See</u> <u>TWM Homes, Inc. v. Atherwood Realty & Inv. Co., Inc.</u>, 29 Cal. Rptr. 887, 902 (Cal. Ct. App. 1963), <u>superseded</u> <u>by</u> <u>statute</u> <u>on</u> <u>other</u> <u>grounds</u>, Cal. Civ. Code § 3439.02.

Here, Defendant Lopez maintained some of Noveon's corporate formalities but failed to abide by others. Noveon held yearly shareholder meetings for the years 2004 through 2007, and the minutes of those meetings were duly recorded. (*Dillon Decl. I* Ex. 7.) Noveon's corporate minutes indicate that Defendant Lopez acted as the Secretary and Director of Noveon throughout the corporation's existence. (*Id.*) However, Defendant Lopez also represented herself, at various times throughout Noveon's corporate existence, as Noveon's President, Vice President, and Treasurer. (*Id.* Exs.

05cv2236W

8–10.)  Most recently, Defendant Lopez testified that she never held a position with Noveon and that she was only involved with the corporation as sole shareholder.  (*Id.* Ex. 14 at 37:15–18.)

Defendant's different titles do not square with Noveon's corporate records. Noveon's bylaws, adopted on the date of incorporation, generally vest the power to appoint and remove officers in Noveon's Board of Directors (the "Board").  (*Id.* Ex. 6 at 11.)  The Board may give written consent to appoint or remove officers without holding a meeting, which must then be filed with the minutes of the proceedings of the Board.  (*Id.* at 9–10.)  If Defendant Lopez truly did hold different positions at different times, the Court can draw only one reasonable inference from the fact that Noveon's minutes do not reflect any changes—Defendant Lopez failed to comply with the process for appointment and removal of corporate officers established by Noveon's bylaws.  (See *Id.* Ex. 7.)

Plaintiff also suggests that Noveon's failure to comply with its annual tax and reporting obligations indicates that Defendant Lopez disregarded the corporation's formalities.  (*Pl.'s Mem. Of P. & A. I* at 13:11–18.)  While Noveon entirely neglected to file income tax forms for its employees, it did pay corporate franchise taxes for 2003 and 2004 and otherwise maintained its corporate status during its operating existence. Plaintiff notes that, by early 2007, Noveon's failure to comply with its annual tax and reporting obligations had caused the corporation to lose its Florida business license and Delaware corporate charter.  (*Dillon Decl. I* Exs. 4, 5.)  However, Defendant Lopez responds that Noveon had already ceased its corporate operations prior to shedding its corporate status in both states.  (*Opp'n* 5:17–24; see also *Dillon Decl. I* Ex. 7 (showing that Noveon was defunct as of June 15, 2006).)

Plaintiff also alleges that Defendant Lopez neglected Noveon's corporate formalities by failing to maintain adequate corporate records.  (*Pl.'s Mem. of P. & A. I* 8:22–9:21.)  Defendant Lopez does not dispute Plaintiff's allegation that Noveon never recorded the purported license agreement executed between the corporation and

Francis Lopez, (*Id.* at 8:22–9:1); never documented the short-term, interest-free loans made to the corporation by Defendant Lopez and Francis Lopez, (*Id.* at 9:2–7); and never executed any written employment contract with the corporation's employees or independent contractors, (*Id.* at 9:8–21). However, as discussed above, Noveon duly recorded the minutes of its shareholder meetings and produced limited corporate records in discovery. (*Dillon Decl. I* Ex. 7; <u>see</u>, <u>e.g.</u>, Ex. 22.)[16]

Despite Defendant Lopez's transgressions, due to the fact that Noveon held yearly shareholder meetings and maintained limited corporate records, the Court finds that a reasonable jury could conclude that Defendant Lopez did not so blatantly disregard Noveon's corporate formalities as to warrant a finding of alter ego liability.

**Commingling of Funds:** In determining whether to disregard the corporate entity, courts also consider whether the shareholder-defendant segregated personal and corporate funds. The court in <u>Schoenberg v. Benner</u>, 59 Cal. Rptr. 359, 368 (Cal. Ct. App. 1967), based its finding of alter ego liability, in part, on the shareholder defendant's "use of corporate funds . . . as if they were his own." The court noted that the shareholder-defendant caused the corporation to pay for such personal expenses as a subscription to a yachting magazine, maintenance on his yachts, clothing, and liquor. <u>Id.</u>

Plaintiff cites numerous instances in which Noveon paid for Defendant Lopez's and Francis Lopez's personal expenses, including auto, health, and life insurance payments, credit card payments, and payments for cable service at Defendant Lopez's residence. (*Dillon Decl. I* Exs. 30–37.) Defendant Lopez directs the Court's attention to Francis Lopez's declaration, which states that many of the payments referenced by Plaintiff were actually business expenditures. (*F. Lopez Decl.* 7:12–8:19.) However, the

---

[16] Plaintiff cites persuasive Ninth Circuit authority suggesting that Noveon's failure to document the loans that the corporation received from Francis and Madeleine Lopez warrants disregarding the corporate entity. <u>See</u> <u>Laborers Clean-Up</u>, 736 F.2d at 524 (affirming finding of alter ego liability where shareholders regularly made interest-free loans to the corporation without receiving promissory notes). However, Plaintiff's reliance on this authority does not end the inquiry. The <u>Laborers Clean-Up</u> court also relied on the defendants' failure to adequately capitalize the corporation—a factor which is not conclusively present here. <u>Id.</u>

self-serving statements of Defendant Lopez's husband, without more, are insufficient to create a genuine issue of material fact regarding the alleged commingling—especially given Defendant Lopez's complete failure to respond to Plaintiff's allegations concerning a number of payments for apparently personal expenses. (<u>Compare</u> *Reply* 7:11–9:17, <u>with</u> *F. Lopez Decl.* 7:12–8:19.) Although Defendant Lopez maintains that Plaintiff has "cherry-picked" a handful of questionable payments to demonstrate that Defendant Lopez impermissibly commingled Noveon's funds with her own, the relevant case law discloses no such requirement that the shareholder-defendant engage in *significant* commingling in order to establish alter ego liability. <u>See</u>, <u>e.g.</u>, <u>McKee v. Peterson</u>, 29 Cal. Rptr. 742, 752 (Cal. Ct. App. 1963) (noting as a factor in disregarding the corporate entity the shareholder-defendant's one-time withdrawal of corporate funds to discharge a personal obligation). However, in light of the requirement that the court consider the totality of the circumstances surrounding the shareholder-defendant's alleged alter ego status, this Court is not prepared to hold that mere commingling of funds, without more, is sufficient to warrant summary judgment on the issue of Defendant Lopez's alter ego liability. <u>See</u> <u>Sonora Diamond Corp.</u>, 99 Cal. Rptr. 2d at 836.

While a considerable amount of the evidence produced by both parties suggests that Noveon's separate corporate personality ceased to exist, the Court is especially mindful of the fact that alter ego is a drastic remedy, not to be taken lightly. <u>See</u> <u>Sonora Diamond Corp.</u>, 99 Cal. Rptr. at 836. Plaintiff's observation that Noveon never achieved solvency and regularly took loans from its shareholders does not necessarily compel the conclusion that Defendant Lopez failed to reasonably and in good faith provide the corporation with startup capital adequate for its prospective liabilities. Similarly, considering that Noveon regularly held Board meetings and duly recorded the minutes of said meetings, the evidence indicating that Defendant Lopez disregarded the corporation's formalities and commingled funds is not as one-sided as Plaintiff would suggest. Accordingly, because genuine issues of material fact exist regarding whether

the separate personalities of Noveon and Defendant Lopez ceased to exist, the Court **DENIES** Plaintiff's Motion for Summary Judgment against Defendant Lopez.[17] (Doc. No. 133.)[18]

### B. The Court Awards Plaintiff $89,530.96 in Damages for Defendant Bears's Willful Violations of Plaintiff's Copyrights and 17 U.S.C. § 1202

#### 1. *Defendant Bears Willfully Violated Plaintiffs Copyrights*

"Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." 17 U.S.C. § 501(a). To establish a successful claim for copyright infringement, a plaintiff must satisfy two requirements: "(1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).

On October 9, 2007, this Court granted Plaintiff's ex parte motion to amend the default judgment entered by Judge Brewster against Noveon. (*RJN II* Ex. 1; Doc. No. 115.) The requested amendment established that "Plaintiff owns valid copyrights in" the Programs. (*Id.* at 2:8–10.) Furthermore, a search of the United States Copyright

---

[17] Because genuine issues of material fact remain regarding the "unity of interests" prong of the alter ego analysis, the Court does not reach the second, "inequitable result" prong. See Sonora Diamond Corp., 99 Cal. Rptr. 2d at 836. At this stage, the Court finds it sufficient to note that the mere fact that a corporate creditor may remain unsatisfied, without more, is not a sufficiently inequitable result to warrant a finding of alter ego liability. Associated Vendors Inc., 26 Cal. Rptr. at 816.

[18] Plaintiff requests that the Court take judicial notice of several documents filed in ancillary federal and state court actions, which tend to establish that Noveon engaged in wrongful and willful conduct. (*Supplemental Req. for Judicial Notice in Supp. of Pl.'s Mot. for Summ. J. Against Madeleine Lopez.*) Insofar as Plaintiff requests that the Court take judicial notice of the existence and content of those documents, the Court **GRANTS** Plaintiff's request for judicial notice. See St. Louis Baptist Temple, Inc., 605 F.2d at 1172.

Office's public catalog[19] reveals that Alan Stanly is the registered claimant of copyrights for the computer programs "Docu Zap," "Prism Forwarder," "Prism Freight Broker," and "Prism P&D"[20]—Programs which Stanly licensed to Plaintiff ETH by way of a December 31, 2003 Exclusive License Agreement. (*Dillon Decl. II* Ex. B.) Accordingly, no genuine issue of material fact exists regarding the first element of copyright infringement, Plaintiff's ownership of the infringed work.

Plaintiff alleges, *inter alia*, that Bears violated its exclusive rights by reproducing Plaintiff's copyrighted source code and by preparing derivative works based on Plaintiff's source code. See 17 U.S.C. §§ 106(1), (2). Bears failed to respond to Plaintiff's discovery requests in connection with the instant litigation after being granted multiple extensions. (*RJN II* Ex. 4 at 2:2–8.) On March 13, 2008, Judge Bencivengo deemed twenty-one Requests for Admission propounded by Plaintiff on Bears as admitted. (*Id.* at 2:9–15; see *Dillon Decl. II* Ex. G.) By virtue of this discovery sanction, Bears effectively admitted that (1) "the software utilized by Noveon to service its customers' needs was derived from" Plaintiff's Programs, (*Dillon Decl. II* Ex. G at 2:6–8); (2) that as an employee of Noveon, he modified source code "substantially similar" to Plaintiff's copyrighted source code, (*Id.* at 3:4–6); and (3) that he "*willfully infringed on Plaintiff[] [ETH's] copyrights*," (*Id.* at 3:12–13) (emphasis added). Thus, no genuine issue of material fact exists regarding the second element of copyright infringement, Bears's violation of Plaintiff's exclusive rights. Accordingly, Plaintiff has established both of the necessary elements of a copyright infringement claim, entitling it to relief.

///

///

///

---

[19] United States Copyright Office, Public Catalog, http://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First (last visited July 23, 2008).

[20] Copyright registration numbers TX0006162187, TX0006210375, TX0006210376, and TX 0006210377, respectively.

### a. Damages

A copyright owner may recover actual damages and additional profits of the infringer under 17 U.S.C. § 504. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id. at § 504(b). If the defendant fails to present proof of deductible expenses and elements of profit attributable to other factors, "'the gross [revenue] figure stands as the defendant's profits.'" Cream Records, Inc. v. Joseph Schlitz Brewing Co., 864 F.2d 668, 669 (9th Cir. 1989).

Plaintiff has established that Bears received $79,530.96 from Noveon, Francis Lopez, and Defendant Madeleine Lopez as payment for services rendered to Noveon between July 4, 2003, and October 27, 2005. (*Dillon Decl. II* Exs. K, L.) Bears has not met his burden of coming forward with proof of deductible expenses and elements of profit attributable to other factors. Accordingly, Bears's gross revenue, as established by Plaintiff, stands as Bears's profits, and the Court **AWARDS** Plaintiff **$79,530.96** in damages and profits under 17 U.S.C. § 504(b).[21]

---

[21] Plaintiff requests, in the alternative, that the Court award the maximum amount of statutory damages, or $150,000. Plaintiff also requests that the Court award $23,173.75 in attorneys' fees incurred in prosecuting the action against Bears. (*Pl.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. Against James Albert Bears* [hereinafter "*Pl.'s Mem. Of P. & A. II*"] at 16:27–17:1.) See 17 U.S.C. § 504(c); 17 U.S.C. § 505. However:

> No award of statutory damages or of attorney's fees, as provided by [17 U.S.C. § 504] . . . shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412(2); see also Evans Newton, Inc. v. Chicago Sys. Software, 793 F.2d 889, 896–97 (7th Cir. 1986) (reversing district court's award of attorneys' fees and statutory damages where relevant copyright was registered after infringement began), abrogated on other grounds by Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 736 n.2 (1989). Although Plaintiff fails to include as an exhibit to its declarations a copy of the original Certificates of Registration for the Programs, the Court takes judicial notice of the fact that Alan Stanly first registered the copyright for "Docu Zap" on June 10, 2005, (greater than three months after its first publication April 1, 2001) and first registered the copyrights for "Prism Forwarder," "Prism Freight Broker," and "Prism P&D" on October 11, 2005, (greater than three months after their first publication on March 26, 2003). United States Copyright Office, Public Catalog, http://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First (in "Search for:" type

## 2. Defendant Bears Willfully Violated 17 U.S.C. § 1202

Under the Digital Copyright Management Act ("DCMA"), 17 U.S.C. §§ 1201–1205, "[n]o person shall, without the authority of the copyright owner or the law[,] intentionally remove or alter any copyright management information" from a copyrighted work. 17 U.S.C. § 1202(1). The section defines "copyright management information" as "the title and other information identifying the work," "[t]he name of, and other identifying information about, the author of a work," and "[t]he name of, and other identifying information about, the copyright owner of the work." 17 U.S.C. §§ 1202(c)(1)–(3). The purpose of the section is "to give an added layer of protection to certain works that were vulnerable to infringement due to advances in modern technology . . . ." Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc., 524 F. Supp. 2d 1184, 1202 (C.D. Cal. 2007).

Defendant Bears testified that, as an employee of Prism, he performed programming work on a computer program called "DocuZap." (*Dillon Decl. II* Ex. A at 95:17–96:4.) After his employment relationship with Prism terminated, Bears went to work for Noveon, where he modified the "DocuZap" code by removing the "DocuZap" name from the program's source code and replacing it with the name "ScanFast." (*Id.* at 96:5–99:18.) Furthermore, as a consequence of the discovery sanctions, Bears effectively admitted that he "modified the source code of the DocuZap software program to change the author from [Prism] to [Noveon]." (*Dillon Decl. II* Ex. G at 2:15–15.) Thus, Bears admitted, both through his deposition testimony and as a result of sanctions, that he altered DocuZap's copyright management information, including the

---

"Stanly Alan," in "Search by:" select "Name . . . ," and click "Begin Search;" click on any "Full Title" to view registration date and first publication date) (last visited July 23, 2008); see Fed. R. Evid. 201(c) ("A court may take judicial notice, whether requested or not"); Idema v. Dreamworks, Inc., 90 Fed. App'x 496, 498 (9th Cir. 2003) (taking judicial notice of copyright registration (citing Fed. R. Evid. 201(b)(2))). Plaintiff's own Motion makes perfectly clear that Bears was employed by Noveon and engaged in the infringement of what would eventually become Plaintiff's copyrighted works as early as July 2003, months after the first publication of the Programs and nearly two years prior to Plaintiff's first copyright registration date. Accordingly, the Court declines to award Plaintiff statutory damages or attorneys' fees for copyright infringement.

title, author, and copyright owner of the program. Moreover, as a consequence of Judge Bencivengo's March 12, 2007 order, Bears effectively admitted that he "willfully violated 17 U.S.C. § 1202." (*Id.* at 3:14.) Accordingly, no genuine issue of material fact remains regarding Bears's violation of 17 U.S.C. § 1202, and Plaintiff is entitled to relief.

### a.    Damages

The DCMA allows a complaining party to recover actual damages together with the infringer's profits, or in the alternative, statutory damages. 17 U.S.C. § 1203(c)(1). A party asserting a 17 U.S.C. § 1202 violation may elect, at any time before final judgment, to receive statutory damages "in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(3)(B). A court has broad discretion to determine the appropriate award of statutory damages within the range set by 17 U.S.C. § 1203. See Sony Computer Entm't America, Inc. v. Divineo, Inc., 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006) [hereinafter Sony II]. "Because there are no decisions construing what is 'just' under [17 U.S.C.] § 1203(c)(3)(A), the Court looks to cases that construe a similar provision, 17 U.S.C. § 504(c), which also provides for statutory damages 'as the court considers just.'" Sony Computer Entm't America v. Filipiak, 406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005) [hereinafter Sony I] (considering damages under affiliated section 1203(c)(3)(A)); see Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) ("If statutory damages are elected [under 17 U.S.C. § 504(c)], 'the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.'").

"Factors the Court can consider in determining the amount of a damages award [under the analogous provision, 17 U.S.C. § 504(c),] are: the expense saved by the defendant in avoiding a licensing agreement; profits reaped by defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement." Controversy Music v. Shiferaw, No. C03–5254 MJJ, 2003 WL 22048519, at *2 (N.D. Cal. Aug. 20, 2003). However, statutory damages are intended

to deter wrongful conduct—"[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952) (considering analogous statutory damages provision under 17 U.S.C. § 101(b) (current version at 17 U.S.C. § 504(c))).

Plaintiff requests that the Court award the maximum amount of statutory damages available under 17 U.S.C. § 1203(c)(3)(B), or $25,000. (*Pl.'s Mem. of P. & A. II* at 16:19–20.) While not dispositive, the Court notes that Plaintiff has not alleged any actual damage accruing to it from Bears's conduct. Furthermore, Plaintiff has already received judgment for all revenues that Bears earned as an employee of Noveon, as incidental to its copyright infringement claim. However, Bears's conduct in violating 17 U.S.C. § 1202 has been deemed willful, and the Court must consider the policy of deterrence underlying the statute. See Sony I, 406 F. Supp. 2d at 1075 (finding it consistent with Congressional intent that statutory damages under 17 U.S.C. § 1203(c) be used to "discourage wrongful conduct by other potential retailers"). Accordingly, although the Court declines to award the maximum statutory damages available, the Court **AWARDS** Plaintiff **$10,000** in statutory damages under 17 U.S.C. § 1203(c)(3)(B). See Sony II, 457 F. Supp. 2d at 967 (awarding four times minimum statutory damages under 17 U.S.C. § 1203(c)(3)(A) in consideration of defendant's willfulness).[22]

///

///

///

///

## IV. CONCLUSION AND ORDER

---

[22] Plaintiff also requests that the Court award $2,317.38 in attorneys' fees incurred in the preparation of this claim. The DCMA provides that a court may, "in its discretion[,] . . . award reasonable attorneys' fees to the prevailing party." 17 U.S.C. § 1203(b)(5). Considering that Plaintiff has already received judgment in excess of $89,000, the Court exercises the discretion explicitly granted by the DCMA and declines to award attorneys' fees.

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment against Defendant Lopez. (Doc. No. 133.) However, the Court **GRANTS** Plaintiff's motion for partial summary judgment against Defendant Bears and **AWARDS** Plaintiff **$89,530.96** in profits and statutory damages. (Doc. No. 132.)

**IT IS SO ORDERED.**

DATED: July 29, 2008

_____
Hon. Thomas J. Whelan
United States District Judge

05cv2236W